**Edward V. LAWRENCE,**
**Petitioner–Appellant,**

v.

**Bill M. ARMONTROUT, Respondent–**
**Appellee.**

**No. 93–1933.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1994.

Decided Aug. 2, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 7, 1994.

---

Daniel P. Card II, St. Louis, MO, for petitioner-appellant.

Stephen D. Hawke, Asst. Atty. Gen., St. Louis, MO, for respondent-appellee.

### ORDER

Aug. 2, 1994

The petition for rehearing by the panel is denied. The suggestion for rehearing en banc is denied.

The letter to Chief Judge Arnold requesting appointment of Judge Heaney as a special master has been referred to the panel, is considered as a motion for appointment of a special master, and is denied.

The court of its own motion withdraws and vacates the opinion filed on June 29, 1994, and substitutes the opinion attached to this order.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON and JOHN R. GIBSON, Senior Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge.

Edward V. Lawrence appeals from the order of the district court[1] dismissing his petition for a writ of habeas corpus. 28 U.S.C. § 2254 (1988). The district court determined that Lawrence failed to demonstrate that the ineffective assistance of trial counsel prejudiced him. We affirm.

A St. Louis County Circuit Court jury convicted Lawrence of capital murder and murder in the first degree. These convictions followed the investigation of two shooting deaths in an apartment building on August 11, 1983. According to witnesses, three men entered an apartment and shot the three people inside, killing two of them. The men then fled in a red or burgundy Oldsmobile which one witness observed had the license number JTE–952, the number later determined to be registered to Lawrence's mother's 1977 red Oldsmobile. Witnesses identified Lawrence as one of the three men. Lawrence received a sentence of life imprisonment without parole for fifty years for capital murder and a consecutive life imprisonment sentence for murder in the first degree. The convictions were affirmed on direct appeal. *State v. Lawrence,* 700 S.W.2d 111 (Mo.Ct.App.1985), *cert. denied,* 476 U.S. 1106, 106 S.Ct. 1951, 90 L.Ed.2d 361 (1986).[2]

Lawrence then filed a request for post-conviction relief pursuant to Missouri Supreme Court Rule 27.26.[3] He alleged ineffectiveness of his trial counsel, basing the request on his trial counsel's failure to interview several potential witnesses who allegedly would have corroborated Lawrence's alibi on the evening of the murders. Lawrence and his trial counsel, but none of the potential witnesses, testified at the Rule 27.26 hearing. Based on the evidence before it, the trial court concluded that Lawrence's counsel rendered constitutionally effective assistance, and denied Lawrence's request for relief. The Missouri Court of Appeals affirmed. *Lawrence v. State,* 750 S.W.2d 505 (Mo.Ct.App.1988).

Lawrence then filed a pro se petition for writ of habeas corpus in federal court, once again asserting ineffective assistance of his trial counsel. After refusing to hold an evidentiary hearing or to appoint post-conviction counsel, the district court adopted the report and recommendation of the magistrate judge that relief be denied. Lawrence appealed, and this court held that Lawrence's trial counsel was constitutionally deficient in failing to pursue Lawrence's alibi defense. *Lawrence v. Armontrout,* 900 F.2d 127, 130 (8th Cir.1990) (*Lawrence I* ). We further

---

1. The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

2. For a detailed discussion of the facts underlying Lawrence's convictions, *see Lawrence,* 700 S.W.2d at 111.

3. Rule 27.26 was repealed and replaced by Rule 29.15, effective January 1, 1988.

held that Lawrence's failure to have his alibi witnesses testify at his Rule 27.26 hearing did not constitute a procedural default of the prejudice requirement articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Lawrence I*, 900 F.2d at 131. Accordingly, we reversed and remanded with instructions for the district court to appoint counsel for Lawrence and hold an evidentiary hearing to determine whether Lawrence could show prejudice stemming from the ineffective assistance of his trial counsel. *Id.* On remand, the magistrate judge concluded that Lawrence's trial counsel's performance did not prejudice his case. The district court disagreed and granted the petition for habeas corpus. This court determined that the district court relied on an incorrect prejudice standard, and we reversed and remanded with instructions that Lawrence's claim be considered in light of the proper standard, as enunciated in *Strickland*. *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir.1992) (*Lawrence II*). On remand, the magistrate judge readopted his earlier Review and Recommendation, concluding that Lawrence's petition should be denied for failure to show prejudice. The district court accepted the magistrate judge's report and denied the petition. This appeal followed.

## I.

■ We first consider the State's argument that Lawrence's ineffective assistance claim is procedurally barred. The State contends that since Lawrence presented no alibi witnesses at his Rule 27.26 evidentiary hearing to support his ineffective assistance claim, he cannot bring a habeas petition based on the testimony these witnesses could have given.

We explicitly decided this issue in favor of Lawrence in *Lawrence I*, holding that his failure to have the witnesses testify did not amount to a procedural default. 900 F.2d at 131. We rejected the State's attempt to relitigate the issue in *Lawrence II* because we concluded that *Lawrence I* constituted law of the case. *Lawrence II*, 961 F.2d at 115 n. 2. Nonetheless, the State raises this argument a third time, arguing that intervening caselaw requires that we apply the excep-

tion to the law of the case doctrine recognized in *United States v. Unger*, 700 F.2d 445 (8th Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 308 (1983), and *Liberty Mutual Insurance Company v. Elgin Warehouse and Equipment*, 4 F.3d 567, 569 (8th Cir.1993).

■ We have stated on numerous occasions that when the Supreme Court has spoken on an issue, our earlier cases to the contrary must not be followed. *See, e.g., Liberty Mut.*, 4 F.3d at 569. This is precisely the argument that the State makes, contending that *Keeney v. Tamayo–Reyes*, ―― U.S. ――, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), and *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), have established new principles relating to procedural bar that render our earlier opinions in *Lawrence I* and *Lawrence II* invalid. Although *Keeney* and *Coleman* undoubtedly further articulate principles of procedural bar, we are not convinced that they would entitle the State to successfully assert procedural bar on the record before us. These cases do establish that a petitioner may not assert a claim for ineffective assistance of post-conviction counsel, *see Coleman*, 501 U.S. at 753–55, 111 S.Ct. at 2567, and that a petitioner must generally develop all necessary material facts in the state courts, *see Keeney*, ―― U.S. at ――, 112 S.Ct. at 1719. *See also Nolan v. Armontrout*, 973 F.2d 615, 617 (8th Cir.1992) (inadequate representation by post-conviction counsel is not cause for procedural default); *Bolder v. Armontrout*, 921 F.2d 1359, 1362–63 (8th Cir.1990) (procedural default occurred when petitioner failed to present supporting evidence at Rule 27.26 hearing), *cert. denied*, ―― U.S. ――, 112 S.Ct. 154, 116 L.Ed.2d 119 (1991). Unlike the petitioners in those cases, however, Lawrence maintained a record showing that he had taken repeated steps to preserve his ineffective assistance claim. At his Rule 27.26 hearing, Lawrence personally advised the court that he had witnesses available to testify on his behalf. As his postconviction counsel told the court, "[Lawrence] requested that I call several individuals that he requested his trial counsel to call...." The court, however, simply ended the hearing. Lawrence's unwavering desire to present these witnesses is fully contained on the rec-

ord before us. Nonetheless, we need not decide whether this sufficiently distinguishes this situation from those in *Coleman, Keeney* and the other cases cited by the State because the State waived its right to assert this argument by failing to raise these issues for consideration by the district court. Our circuit has joined other circuits in holding that the State must raise procedural bar issues, or they are waived. *See Travis v. Lockhart,* 925 F.2d 1095, 1097 (8th Cir.1991); *Fagan v. Washington,* 942 F.2d 1155, 1157 (7th Cir. 1991); *Francis v. Rison,* 894 F.2d 353, 355 (9th Cir.1990); *Mayo v. Lynaugh,* 893 F.2d 683, 686 (5th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 272, 116 L.Ed.2d 225 (1991); *see also Engle v. Isaac,* 456 U.S. 107, 125 n. 26, 102 S.Ct. 1558, 1570 n. 26, 71 L.Ed.2d 783 (1982). This approach is consistent with our general requirement that issues first be raised before the district court. *See Stafford v. Ford Motor Co.,* 790 F.2d 702, 706 (8th Cir.1986). Thus, we address the merits of Lawrence's ineffective assistance claim.

## II.

■ A habeas petitioner seeking relief based on ineffective assistance of counsel must show: (1) his counsel's assistance fell below an objective standard of reasonableness in that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would use under similar circumstances; and (2) that this deficient performance prejudiced his defense. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65; *Brewer v. Iowa,* 19 F.3d 1248, 1250 (8th Cir.1994). We concluded in *Lawrence I* that "Lawrence has established the first prong of the *Strickland* standard." 900 F.2d at 130. Thus, only the second *Strickland* factor, whether trial counsel's ineffective assistance prejudiced Lawrence, remains in dispute.

■ Ineffective assistance claims present mixed questions of fact and law. *Porter v. Lockhart,* 925 F.2d 1107, 1109 (8th Cir.), *cert. denied,* 501 U.S. 1256, 111 S.Ct. 2902, 115 L.Ed.2d 1066 (1991). Therefore, we review the district court's findings of fact under the clearly erroneous standard and its application of the law to the facts de novo. *Id.*

■ In order to show prejudice, Lawrence must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. More specifically, *Strickland* requires that "there [be] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. A petitioner need not show that he more likely than not would have been found innocent had his counsel performed adequately, but must demonstrate at least a reasonable probability. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S.Ct. at 2069; *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). The Supreme Court elaborated on the prejudice standard in *Lockhart v. Fretwell,* — U.S. —, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) and *Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). These cases make clear that although a reasonable probability of a different result is not the sole test for prejudice, it remains a necessary condition. *See Lockhart,* — U.S. at —, 113 S.Ct. at 843; *Nix,* 475 U.S. at 175, 106 S.Ct. at 998–99.

■ Twelve witnesses testified, either in person or by affidavit, at Lawrence's evidentiary hearing. Lawrence primarily relies on three of these—Brenda Buie, Felicia Longstreet Dixon and Yvonne Pillow—each of whom offered testimony relevant to Lawrence's alibi defense. Lawrence sought to establish through these witnesses' testimony that he was playing cards on the evening of the offense. The remaining witnesses offered additional testimony which purported to undermine the State's case against Lawrence.

Thus, these three witnesses, if believed by the jury, would have established Lawrence's alibi defense. Nonetheless, the magistrate judge found that Lawrence had not demonstrated prejudice from the failure of his trial counsel to present these witnesses. We briefly consider the testimony of Lawrence's alibi witnesses and the magistrate judge's reasons for discounting it.

Brenda Buie testified that she remembered playing cards with Lawrence, Betty Buie (now deceased) and Dixon during the relevant time period on the evening of the murders. Brenda Buie could not, however, recall any other details about the evening. Dixon's testimony was even more vague. Dixon stated that she remembers playing cards with Brenda Buie, Betty Buie and Lawrence during the summer of 1983, but does not specifically remember playing on the night in question. Lawrence's mother, Yvonne Pillow, also testified. She stated that she owned an automobile like the one which witnesses identified as being used in the offense and being driven by Lawrence. According to Pillow, Lawrence did not live with her, did not have keys to the car, and could not have used it on the evening in question because Pillow owned a second vehicle which would have been parked behind it that evening. She admitted, however, that she did not specifically check to see if the car was there that evening.

The magistrate judge rejected the testimony of Lawrence's alibi witnesses, concluding that their testimony was insufficient to meet the prejudice standard of *Strickland*. In particular, the magistrate judge found Buie's testimony not credible and her recollection of the evening "poor at best." Dixon's testimony "neither corroborated nor denied" Buie's account. Similarly, the magistrate judge did not construe Pillow's statements as refuting the testimony of the eyewitnesses who identified the car, the license number and Lawrence. Furthermore, the magistrate judge referred to Pillow's failure to present this testimony during the Rule 27.26 hearing, at which she testified. The magistrate judge also found it significant that Pillow attended every day of her son's trial but made no effort to alert Lawrence's trial counsel of this information.

The district court conducted a de novo review of the magistrate judge's report. The district court recognized that some pre-*Strickland* decisions by this court counsel against judging the credibility of witnesses in a habeas proceeding, and thus the court specifically declined to judge the credibility of the witnesses. *See McQueen v. Swenson,* 560 F.2d 959, 961 (8th Cir.1977); *Thomas v.*

*Wyrick,* 535 F.2d 407, 416–17 (8th Cir.), *cert. denied,* 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976). The court proceeded to analyze the trial testimony and the testimony of the alibi witnesses testifying at the habeas hearing.

The district court concluded, based on the totality of the evidence, that the evidence of Lawrence's guilt was substantial, and Lawrence had not affirmatively proven that there was a reasonable probability that had his counsel interviewed and called the alibi witnesses, Lawrence would have been acquitted. Further, the court concluded that Lawrence had not shown that his trial was fundamentally unfair, or the result was not reliable. The court then adopted the magistrate judge's report and recommendation.

██ Lawrence argues that the rejection of his witnesses' testimony violates the teachings of *McQueen* and *Thomas*. These cases hold that "[p]etitioner's proof of prejudice should not be defeated by the district court's low opinion of the credibility of relevant and admissible testimony." *Thomas,* 535 F.2d at 417; *see McQueen,* 560 F.2d at 961. However, the district court explicitly refused to judge the credibility of the witnesses. Further, if we were to read this language literally, as Lawrence argues we should, it would indicate that the prejudice requirement of *Strickland* is met whenever a habeas petitioner's witness testifies to a fact which, if fully believed, would be inconsistent with the petitioner's guilt. This interpretation would require habeas relief in such instances regardless of the strength of the evidence supporting the petitioner's conviction. Such an interpretation runs counter to *Strickland*'s express statement that prejudice exists only when there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687, 104 S.Ct. at 2064. In order to determine if particular testimony might reasonably have led to a different result at trial, as *Strickland* requires, the district court must consider the strength of the offered testimony relative to the strength of the State's case. The district court faithfully followed the following instruction from *Strickland:*

Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069.

 To the extent that *McQueen* and *Thomas* might suggest a different standard, they have necessarily have been superseded by the Supreme Court's later statements in *Strickland.* However, the basic insight of those earlier cases—that the role of a federal court considering a habeas petition is not to predict the hypothetical outcome of a future trial—remains good law. *Chambers v. Armontrout,* 907 F.2d 825, 832–33 (8th Cir.) (en banc), *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990). A petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2068. "The Constitution merely requires 'a probability sufficient to undermine confidence in the outcome.'" *Chambers,* 907 F.2d at 833 n. 14 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068).

"It is Lawrence's burden to affirmatively prove that there is a reasonable probability that, had his trial counsel interviewed and called the alibi witnesses, he would have been acquitted." *Lawrence II,* 961 F.2d at 115. The district court concluded Lawrence had not met this burden, and our review of the record convinces us that the district court did not err in so ruling. Dixon offered no testimony specific to the night in question. Buie testified to a specific date and time, but could offer almost no other details about that evening. Pillow, and to a lesser extent the remaining witnesses, offered testimony that cast some doubt on aspects of the State's case but did not actually rule out the possibility that Lawrence committed the crimes as charged. When considered together this testimony might justify relief if the State's case was relatively weak; however, as the district court stated, "the evidence of petitioner's guilt is substantial."

For example, the State introduced testimony of three different witnesses who identified Lawrence as being at the scene of the crime on the evening in question. One of these witnesses saw Lawrence from only five feet away. Another of the witnesses memorized the license number of the car used in the crime, and stated that he had "no doubt" about his identification of the car, later determined to be owned by Pillow. In light of this testimony and the other evidence introduced by the State, we do not believe there is a reasonable probability that the result would have been different, and that Lawrence would have been acquitted if his alibi witnesses testified at trial. *See Cuevas v. Henderson,* 801 F.2d 586, 592 (2d Cir.1986) ("the evidence of identification ... was so strong and substantial and the alibi evidence so insubstantial" that the *Strickland* prejudice standard was not met), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987). Thus, Lawrence has not shown prejudice as required by *Strickland.* 466 U.S. at 687, 104 S.Ct. at 2064.

Accordingly, we affirm.